v. United States. A moment to get settled. Thank you so much. Thank you. How are you feeling, Mr. Nutter? Not 100%. I'm feeling a lot better than yesterday. Thank you very much, Judge Perez. Good morning, Your Honors. My name is Daniel Nutter. I represent the defendant appellant, Mr. Wynn Harris Sheldon. Almost 22 years ago, my client attempted to commit suicide. And at the heart of this morning's issues is that a result of my client's 35-year cocaine addiction, Mr. Sheldon is not only still serving time for that July 2000 offense, but will in all likelihood continue to be incarcerated for even more years as a result of the unreasonable additional term supervised release imposed in this case. Before turning to the substantive merits, however, I'd like to address the issue of the proper standard of review. The government contends that heightened plain error standards should apply to the procedural reasonableness issue. As the government asserts, my client failed to properly preserve the issue in the district court. But I believe, Your Honors, a fair consideration of the record, particularly at pages 37 and then pages 39 and 40 of the Mr. Sheldon directly addressed the district court and had a colloquy with the district court following the district court's pronunciation of the sentence, pronouncement of the sentence, I should say, to object to what Mr. Sheldon believed was the irrational imposition of this additional supervised release term. But didn't Mr. Sheldon have wrong information about how much time was left on the supervised release? He thought it was just months, but it was years. Yeah, well, he had been wrongly advised by his counsel. He believed that if he served a year or a year in the day, that would kill his paper, and that was wrong. Right. It was wrong, and Judge McAvoy knew it was wrong. And what are we to make of him sort of being aggressive to the judge? Poor policy, don't you think? I'm never showing up, but I know, as I mentioned, obviously Mr. Sheldon did not raise this objection in the manner in which we would expect a member of the bar to raise such an objection. Of course, the judge also used profanity in response to my client. Yes, I saw that. It wasn't the highest, it wasn't the best moment for the... It wasn't the best moment for anyone, but I think in the case of Mr. Sheldon, I need to read that exchange as representing my client's attempt to preserve this issue and raise his objection. Well, he doesn't want his plea back, right? Even though he was inappropriately advised by his counsel, you don't raise that and seek the vacature of his plea, do you? No, no, no, we don't. Well, so where does that leave us? So the sentence is within the appropriate range, and I understand that you feel that he'd be better off at a halfway house, but he doesn't get to name how he's dealt with, does he? I mean, the fact that he disagrees with the judge doesn't make the judge's judgment wrong. Well, that's absolutely correct, Judge Wesley. The issue here is not getting the sentence that he wants or doesn't want. It's whether the rationale for the sentence, and again, there is no rationale provided for this sentence, but to the extent that we can attempt to suss one out... Doesn't he say in the sentencing, you've been in trouble for all your life and you've had so many convictions? Doesn't the judge say that? I'm sure I've read that. Well, there's a point after the pronunciation of the sentence where the judge says, you've exhibited a repeat pattern of substance abuse while on supervision, but if anything, that totally undermines the government's position here because it suggests that the purpose of the sentence is not rehabilitation. He's admitting that the supervised release is failing to rehabilitate him. In fact, earlier, page 35, what I just read was on page 38, but on page 35, he says, and I quote, I really think it's a drug problem more than anything. I don't know how to get rid of it. So the issue here is that this court has held, in the Hanson case especially, that it's generally improper to consider a defendant's drug addiction unless it is specifically for a rehabilitative purpose, but it's improper to consider it for even a deterrence purpose. I just thought it felt sorry for Judge McAvoy when he says, I don't know what to do about you. And he tells him before he leaves, I'm not showing up. I'm not showing up. I'm not going to do it. I'll be back here. I mean, what was McAvoy going to do? He couldn't make him go through any rehabilitation that would make a difference. Well, I certainly feel for Judge McAvoy as well, for whom I have an extraordinary amount of respect, and I understand that sentencing anyone is the most difficult thing for a district court judge, but I think in terms of the sort of humility and the institutional competence, we have to realize that not every problem can be solved through the criminal justice system, and drug addiction is one of those. The question of what you or I would have done is not what's before us, right? The question is whether or not the judge met his minimal burden of considering the factors and issued something that was within the guidelines, right? I mean, we're asking you to tell us what was so outrageous or egregious in this instance to change what the outcome would look like. What do you have for us? Well, what I have, Your Honor, is that there's no reasonable basis that the district court could possibly find that sentencing my client to another two years of supervised release, which carries with it mandatory additional imprisonment when he violates it under 18 U.S.C. 3583G. There's no reasonable when he has one, on the record, saying he's not going to comply, and two, that he's had a history of challenges in his life? I mean, that's not reasonable. There's no reasonable basis to believe that this is going to be successful in treating the underlying problem. They've tried this now for 21, now 22 years, but it was 21 years at the time of sentencing. Does that mean the worse he is, the better off he is? The more, excuse me, the reason why he was violated is because A, he didn't show up for treatment, and B, he had a positive urine sample, as I recall. I mean, all of his violations were relative to his drug habit. So his drug habit, the logic of this is his drug habit then entitles him to a sentence that either abrogates supervised release, and the judge has no interest in keeping an eye on him for a period of time because he's so bad when he's out for supervised release? Is that it? No, absolutely not, Your Honor. My client actually asked for a longer period of incarceration than even his attorney asked for. My client is not suggesting he should not be punished. What my client is suggesting is that a term of supervised release, which is not only rehabilitation, it's also monitoring. There's some public safety justification for that. I mean, wouldn't you concede at least that? I would concede that, but primarily it is rehabilitation, and that's what this court says in all deed. Let me ask you a more primary question. When he goes back out on supervised release, is he eligible for a halfway house or some kind of residential care, residential treatment? Back when I was a state court judge, I had the great privilege to have founded, to start one of the first drug courts in upstate New York in Rochester. And the only model that worked was where people were in treatment, in residential treatment, because the people with long term drug habits need to be monitored. He was right in this regard. Is this option available to him when he's on supervised release, or to him and his probation officer? I think the short answer is yes, but I think the longer answer is that it's sort of a carrot and a stick. Then why is this sentence unreasonable if what he wants is potentially available to him when he gets on to supervised release the next time? Because it's the stick aspect of it. Because it's the knowledge that any failure on this is going to subject him to additional- Which is precisely why the drug courts work so well. The recidivism rate in drug courts in upstate New York in the state system was less than 20%. But the record in this case demonstrates, and it's a 21 year record, that it doesn't work for this particular client. So it's hopeless for him then, is that what you're saying? No, I'm saying that supervised release with the backside punishment attached to it is not going to be the way that solves this problem. Thank you. We've kept you longer. We will see you in a moment. So if you are ready. Thank you sir. May it please the court, Rajiv Dosanjh for the United States. I just wanted to address your last question about the halfway house. Tomorrow, it's my understanding that he's going to be released from prison to a halfway house in Albany. He'll be there for approximately two months, assuming he follows the rule of the halfway house. Then he will begin supervised release. So he will have two months of a halfway house to start or to end his prison term. Is it like inpatient care? I don't know if it's as comprehensive as inpatient care, but it's a residential facility where he'll have wraparound services. They'll help him find work. They will monitor whether he's complying with the prohibition against using drugs. And this is what he requested. It's not the four months that he requested, but it's a two month period. My understanding is that the probation office could recommend as a modification of a supervised release a continuation of a halfway house if that's necessary. If that proves to be the best option. So it's not like he's just being let on the street right now and to fend for himself. That's not going to happen. The second issue, I think, if we're addressing the reasonableness of this sentence, it is true that rehabilitation is a very important part of supervised release, but it's also true that protecting the public and deterrence is another part of supervised release. And here, given the pattern of his behavior going back very long to when he was 17 and continually up to the present, protection of the public was, I think, a paramount consideration here. And that's why the government asked for a two year period of supervised release to ensure that he doesn't fall back into the same pattern, or to do our best to ensure that he doesn't fall back into the pattern, which involved not only his drug use, but threatening other people for money to get to supply his habit. So there were other victims here. There were people who were held up by him, people who were restrained, assaulted by him in the past. So this is not a simple case of someone who just is self-destructive. He's a person who engages in dangerous acts to feed his drug habit. So that's another important consideration the judge had. I think, along with the court's, the district court's concern for rehabilitation, which is evident from its pre-sentencing colloquy with the defendant, I think the conclusion here is that this was definitely within the range of permissible decisions. I think it's unfortunate that he's had this pattern of violating supervised release, but I think it's not unreasonable to give him another chance to try to use the services that are being provided for him, including a drug program while under supervision, including the halfway house, to try to change things. I don't think, I think the judge may have acted unreasonably by giving up. And I think the Supreme Court decision that we cite in our brief says that, that it's not required for the judge just to give up on someone who's violated in the past. And I think the judge was unwilling to do that here. And you're right, Your Honor, this wasn't the perfect revocation hearing. Things got off the rails, I think, at the end. But here we did have a judge who was engaging in a back and forth with his defendant, who was asking him questions, listening to what he was saying, and then pronounced sentence. And I think that is actually more, it gives you a greater substantive record to go on on what the judge was thinking. So what I would have liked to see in the colloquy I didn't see was either the judge or his attorney stating on the record that the calculation was wrong. That if you serve a year and a day, you will still have a supervised release. And no one told him that. The lawyer said, I'll talk to you on Thursday. But if someone had, if the judge had told him that, it might have gone down easier. But the judge didn't do it. And the judge knew it, too. Right, and I think as defense counsel points out, admirably, the judge did find, when he was calculating the guidelines range, that you do have additional time. It's not just a year left. You have, there's two, three years left. Right, but he didn't say that on the record. He did say that the maximum I can impose of supervised release. Maybe. So he did say that. I know this is a troubling aspect of the hearing. But it seemed everyone was just talking around each other and not to each other. Right, and obviously, as the court has pointed out, this is not a claim that's being made. He's not seeking to go back on his confession of omissions of supervised release violations here. You're going to make sure he doesn't go back to the old neighborhood and start using drugs again. I mean, Your Honor, I think that Mr. Sheldon, and this is, again, this is the colloquy that they're engaging in. And I think Mr. Sheldon, you know, reasonably pointed out that I can't just move. And that was also part of the judge's thinking, that it doesn't bode well, that you're going to be let out and this may happen again. That, I don't think, is a reason against supervised release. I think that's actually a reason for it. And, again, he's going to have services. He's going to have the halfway house. So I think it's only reasonable for the judge to hope that he could change this time around. It doesn't bode well, given what he said, but you never know. You never want to give up on people too early. And I think, again, sorry. Counselor, if I may, can I ask you to speak on the open court requirement that was argued, at least in the papers? I understand that the standard is minimal. And I think there's certainly an argument to be met that that minimal standard was met in this case. But if you could explain to me how you think we can ensure that it doesn't just become window dressing, that there's actually some teeth, given the bareness in this case of explaining? Yeah, I think, for the most part, I think judges do follow the open court requirement. I think it's not a case where this is a kind of rampant ignoring of that rule. I think because the judge engaged in a fairly extensive pre-sentencing colloquy with the defendant, I think in the judge's mind he felt that this was now clear why he was doing what he was doing. Right, but, I mean, no one is casting aspersions on the intent of the judge. It was clearly a hard matter. My interest is making sure that we draw an appropriate line to make sure that this requirement, which the circuit has said is minimal, especially in a context like this, doesn't become nonexistent. So I'm hoping that you can help articulate for me when is enough for a minimal standard. Well, I think, Your Honor, I think this is a case where I think you do have the minimum level here. And I think what you want to ensure and what this court has said, you want to ensure that the judge has considered the arguments of the parties, which the judge clearly did here, and you want to be able to review the reasons for the imposition of supervised release. Again, I think that's a minimal standard that's been met here. So you would say that there's two components to meeting the standard? There's an argument of the party and being able to review the reasoning? I think that's what the court's precedents indicate, that you want to ensure that there's been a deliberation, a hearing of the party's arguments, and you want to ensure that you have enough to review to make sure that the sentence was reasoned. And I think that's met here. The other aspect of this, Your Honor, is I think that defense counsel and perhaps the- as minimal as this or even perhaps more minimal than this was met? I think if you look at the Thorpe case that we cite in our brief, it's a short decision. I handled that and I know the background of it, but it was a very similar situation where the judge had an extensive pre-sentencing colloquy, and then after it imposed a sentence, it didn't give an additional explanation. And the court upheld that. I think there's a couple other cases that we cite in our brief that were, again, as long as the court- where the court has acknowledged you could have said more and it would have been better if you had said more, but because we can understand the reasoning behind the sentence, it's not plain error. And I think I was going to say that I think defense counsel and I- and this is something we will urge our own attorneys to do. If there is no explanation, it's incumbent on, I think, both parties to request additional explanation. And if you don't, that's when plain error applies. I think it would have been very easy and defense- Mr. Sheldon here was represented by counsel. The counsel didn't say at the end of the hearing, I don't understand why you did what you just did. Mr. Sheldon opposed the substantive- the idea that he would have to have further supervised release, and that was what he objected to. But the explanation, defense counsel didn't say, you've not given reasons. His lawyer kept saying, I'll talk to you on Thursday. Right. This is also, I think, one aspect that may not come through in the transcript. This was a video teleconference. So I think- I'm not sure that his attorney was in the same spot with his defendant. So that's why I think he was trying to communicate through the video. I see. It was unsatisfying to me that he didn't do just what you suggested. You know, I think that's- it is a frustration that these issues should not have to come up on appeal. But when they do, I think that's what the plain error standard is for. And I think that is enough of an incentive to raise these issues. If you have real concerns about the judge not having considered your arguments or not having a reason, it's incumbent on the parties to say something. Yeah. Yeah. Thank you so much. Thank you. Mr. Nutter, you've got a couple minutes. Logan, I want to respond to that last point first, because it's apparent that this is exactly what Mr. Sheldon was trying to communicate. Even though his attorney didn't, and, yes, he was represented by counsel, but counsel was failing to make this objection, so Mr. Sheldon himself did. It's apparent that Mr. Sheldon did not understand the rationale for this sentence, even if the government argues that this court might be able to- And I think the judge understood it. Don't you agree? The judge understood the terms of it but didn't put it on the record, although opposing counsel says he did say one or two things. Well, that's why this court in all deems made it clear that the 3553C is not just there for the benefit of the appellate court to review it. It's so that the defendant understands, so the public understands, so even probation understands what the basis for the sentence is and where it's clear in this case from the colloquy that my client does not understand it, I think that's the clearest evidence both that the court failed to do what it had to do to inform my client so that my client understood it and also that plain error review should not apply because my client was trying in his way, admittedly not very respectfully, but nevertheless trying to preserve this issue in order to get an actual explanation for him that he would understand. So I don't think plain error should apply. If you look at that Thorpe case the government just mentioned, you know, I've read it. There's like no discussion. There's just a single sentence that says, but we can figure out what it is from the record. I mean, it doesn't really provide any basis to distinguish that or this or the other case because, again, the government's argument would prove too much if you could always just look at the, I mean, parties allocute in every case. You know, if you could just say, well, parties allocated, so the fact that we more or less knew what they were allocuting about means, you know, that we can suss out some potential cases. Just before I totally run out of time, I want to super quickly address two things the government said. First, the government suggested that specific deterrence would be a basis for this, but quoting from the Hansen case, this is 701 F. 2nd, 1078, and the quote is from page 883. Surely a sentence would encounter serious objections if it were enhanced because of addiction or illiteracy to achieve such sentencing objectives as retribution, denunciation, or specific objective deterrence. So, again, the precedent of this court is that specific deterrence cannot be a legitimate reason for considering the defendant's addiction. And finally, although the government suggests that my client had previously threatened people at other times, and that deterrence of those acts was also a consideration, that is simply not at any part of the record in this case. It's true that in the 2018 revocation hearing there was some discussion of that, but if you look at this violation hearing, the 2021 violation hearing, there's absolutely no discussion whatsoever of the need to protect the public against potential future crimes. Thank you so much. We've kept you longer than we were supposed to. We're very grateful for these thoughtful arguments on both sides, and we will take this under advisement. Thank you very much, and I do hope you feel better, Mr. Nooter.